**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| HEATHER R. SCULLIN, D.O.<br>30860 Lake Road<br>Bay Village, Ohio 44140<br><br>Plaintiff,<br><br>v.<br><br>BON SECOURS MERCY HEALTH, INC.,<br>c/o Corporation Service Company<br>1160 Dublin Road, Suite 400<br>Columbus, Ohio 43215<br><br>and<br><br>BON SECOURS MERCY HEALTH MEDICAL GROUP LLC<br>c/o Corporation Service Company<br>1160 Dublin Road, Suite 400<br>Columbus, Ohio 43215<br><br>and<br><br>MERCY HEALTH – REGIONAL MEDICAL CENTER, LLC, d/b/a MERCY HEALTH – LORAIN HOSPITAL<br>c/o Corporation Service Company<br>1160 Dublin Road, Suite 400<br>Columbus, Ohio 43215<br><br>and<br><br>MERCY HEALTH LORAIN, LLC<br>c/o Corporation Service Company<br>1160 Dublin Road, Suite 400<br>Columbus, Ohio 43215<br><br>and<br><br>MERCY HEALTH PHYSICIANS LORAIN LLC | Case No.<br><br>Judge<br><br>**Complaint**<br><br>(Jury trial demanded) |

c/o Corporation Service Company, )
1160 Dublin Road, Suite 400 )
Columbus, Ohio 43215 )
)
and )
)
MERCY HEALTH PHYSICIANS )
LORAIN SPECIALTY CARE LLC )
c/o Corporation Service Company, )
1160 Dublin Road, Suite 400 )
Columbus, Ohio 43215 )
)
and )
)
GILBERT PALMER, M.D. )
3700 Kolbe Road )
Lorain, Ohio 44053 )
)
Defendants. )

1. For several years, Bon Secours Mercy Health has paid a highly productive female physician with decades of experience a much lower wage rate than her male counterparts for performing substantially the same job at Lorain Mercy Health Hospital, even though she has greater seniority and experience than the male physicians. When the female physician told Hospital executives she felt discriminated against based on sex with respect to her pay, the Hospital President told her that anyone who felt that way "should be separated" from the Hospital. Within weeks, the Hospital threatened to cut a significant portion of her duties, and thus her compensation. Despite her repeated complaints, the Hospital continues to discriminate against the female physician by paying her a much lower wage rate than her male counterparts performing a substantially equal job.

2. The female physician is Dr. Heather R. Scullin. She brings this case to vindicate her rights to be free of pay discrimination based on sex and to be free from retaliation for making protected complaints about sex-based pay discrimination.

**Jurisdiction and Venue**

3. This Court has jurisdiction based on 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 216(b). The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

4. Venue is proper under 28 U.S.C. § 1391, as Defendants committed the unlawful discrimination and employment practices alleged herein within this District.

5. On or about October 25, 2023, Plaintiff filed a timely charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Ohio Civil Rights Commission.

6. The EEOC investigated and found probable cause to believe that Defendants violated both Title VII of the Civil Rights Act and the Equal Pay Act by discriminating against Dr. Scullin based on sex.

7. Specifically, the EEOC determined that Defendants paid Dr. Scullin a lower wage rate than a similarly situated male doctor, despite performing substantially equal work in terms of skill, effort, and responsibility, under similar working conditions in the same location.

8. The EEOC also determined that Defendants failed to provide an affirmative defense to justify the difference in pay.

9. The EEOC issued a notice of right to sue less than 90 days prior to the filing of this action.

10. Plaintiff has satisfied all conditions precedent to bringing and maintaining this action.

**Parties**

11. Plaintiff Heather R. Scullin, D.O., is an Ohio resident.

12. Dr. Scullin is female.

13. At all times relevant to this lawsuit, Dr. Scullin was a "person" and an "employee" within the meaning of the Equal Pay Act, Title VII of the Civil Rights Act, Ohio Revised Code Chapter 4112, and Ohio Revised Code § 4111.17.

14. Defendant Bon Secours Mercy Health, Inc., is a Maryland company doing business in Ohio.

15. Defendant Bon Secours Mercy Health Medical Group LLC is an Ohio entity doing business in Ohio.

16. Defendant Mercy Health – Regional Medical Center, LLC, d/b/a Mercy Health – Lorain Hospital, is an Ohio entity with its principal place of business in Lorain, Ohio.

17. Defendant Mercy Health Lorain, LLC, is an Ohio entity with its principal place of business in Lorain, Ohio

18. Defendant Mercy Health Physicians Lorain LLC is an Ohio entity with its principal place of business in Lorain, Ohio.

19. Defendant Mercy Health Physicians Lorain Specialty Care LLC is an Ohio entity with its principal place of business in Lorain, Ohio.

20. All Defendants other than Gilbert Palmer are referred to collectively as the "Bon Secours Defendants" or "Bon Secours."

21. At all relevant times, the Bon Secours Defendants were a "person" and an "employer" within the meaning of the Equal Pay Act, Title VII of the Civil Rights Act, Ohio Revised Code Chapter 4112, and Ohio Revised Code § 4111.17.

22. At all times relevant to this lawsuit, the Bon Secours Defendants acted through their supervisory and/or managerial agents, servants, and/or employees, who were acting in the course and scope of their agency, service, and/or employment, and possessing actual or apparent authority over hiring, firing, compensation, advancement, and other terms and conditions of employment.

23. Defendant Gilbert Palmer, M.D., is an Ohio resident, and at all relevant times was a person within the meaning of Ohio Revised Code § 4112.02(J).

24. Since on or around 2020, Palmer has been Chief Medical Officer for Mercy Health Lorain Hospital, and since around January 2022, has been President of Mercy Health Lorain Hospital, and as such was a supervisory and/or managerial agent, officer, and/or employee of the Bon Secours Defendants,

acting in such capacity, in furtherance of the interests of said Defendants and/or acting in his respective individual capacity.

## <u>Statement of Facts</u>

25. Dr. Scullin is an Ohio-licensed physician and a 1992 graduate of the Ohio University College of Osteopathic Medicine.

26. Dr. Scullin completed her residency in physical medicine and rehabilitation at Metro Health Medical Center in 1996.

27. Dr. Scullin is board certified in physical medicine and rehabilitation by the American Board of Physical Medicine & Rehabilitation.

28. Dr. Scullin began working for Mercy Health Lorain Hospital (the "Hospital") in 1997 as a physical medicine and rehabilitation physician.

29. In 1999, she was promoted to Medical Director of Physical Medicine and Rehabilitation at Mercy Health Lorain Hospital.

*<u>Defendants begin using an RVU system to compensate physicians at Mercy Hospital</u>*

30. In 2017 or 2018, Bon Secours changed the method by which it compensates physicians at the Hospital and began using a Relative Value Unit (or "RVU") system.

31. RVUs are a means by which the Centers for Medicare & Medicaid Services and private insurance companies define the value of services and procedures provided to patients by physicians, based in part on: the time, skill and experience required, and nature of the care provided; as well as costs of providing care; and, risk.

32. Under an RVU system, a hospital system determines what amount to pay each doctor per RVU for the work they perform using a "conversion factor" that assigns a dollar amount per RVU.

33. Hospital systems using an RVU system for physician compensation determine what conversion factor to apply to each individual physician, and thus, how much to pay each individual doctor per RVU.

34. RVUs and the conversion factor play a critical role in determining physician compensation.

35. When Bon Secours switched to an RVU system, it told Dr. Scullin her conversion factor (and thus her compensation rate for the work she performed) would be $31 per RVU.

36. Then-Chief Operating Officer of Mercy Health Physician Group Mark Rau told her the rate was non-negotiable.

*The Hospital pays Dr. Scullin a lower wage rate than male co-workers performing the same work*

37. In or around 2019, Dr. Scullin learned that her conversion factor per RVU of $31 was well below industry average for a physical medicine and rehabilitation doctor. She pointed that out to Bon Secours and in March 2020 it raised her rate.

38. Still, since at least 2020, Bon Secours has paid male doctors performing the same and/or substantially equal work for Defendants a higher conversion factor (and thus wage rate) per RVU than they have paid Dr. Scullin, despite her greater experience and seniority.

39. One of those male doctors is Sanjay Mathur, a physician in her department with less experience and less seniority than her.

40. From March 2020 through the end of December 2023, Bon Secours paid Dr. Scullin $42.50 per RVU.

41. During this same period, however, Bon Secours paid Dr. Mathur $62 per RVU—$19.50 more per RVU than it paid Dr. Scullin for the same and/or substantially equal work.

42. For 2024, Bon Secours paid Dr. Scullin $45 per RVU.

43. Yet for 2024, Bon Secours paid Dr. Mathur $62 per RVU—$17 more per RVU than it paid Dr. Scullin for the same and/or substantially equal work.

44. Starting in January 2025, Bon Secours reduced physician RVU conversion rates because of reimbursement changes made by the Centers for Medicare & Medicaid Services.

45. For 2025, Bon Secours cut Dr. Scullin's conversion rate to $39.50 per RVU.

46. By contrast, for 2025, Bon Secours paid Dr. Mathur $57 per RVU—$17.50 more per RVU than it paid Dr. Scullin for the same and/or substantially equal work.

47. Through this reduction, Bon Secours cut Dr. Mathur's wage rate by approximately 8% but cut Dr. Scullin's by approximately 12%.

48. The disparity in RVU rate between Dr. Scullin and her male counterpart, Dr. Mathur, continues to this day.

49. To the extent Dr. Scullin has earned more in total compensation than Dr. Mathur in a given year it is because she has worked more than him, in part to make up for Defendants paying her a lower wage rate than him and her male co-workers.

50. Upon information and belief, over this period, Bon Secours paid and continues to pay other male doctors—both in and outside her department—who perform the same and/or substantially equal jobs requiring substantially equal skill, effort, and responsibility, and performed under substantially similar working conditions, a higher RVU conversion rate than it paid and continues to pay Dr. Scullin.

*Defendants threaten and retaliate against Dr. Scullin after she raises concerns about sex discrimination against female physicians at the Hospital*

51. In January 2020, Dr. Gilbert Palmer became Chief Medical Officer for Mercy Hospital.

52. In March 2020, Dr. Palmer called Dr. Scullin and said he overheard she felt she was not being paid fairly based on her gender.

53. Dr. Palmer warned Dr. Scullin to exercise caution because, he said, he could not have one of his physicians claiming they were discriminated against based on their gender.

54. In late 2022 and during the winter and spring of 2023, over the course of several meetings with Dr. Palmer (by then Hospital President) and other Bon Secours executives, Dr. Scullin raised complaints about disparate treatment of female physicians at Mercy Hospital.

55. In one of those meetings, in or around January 2023, Dr. Palmer disclosed to Dr. Scullin that in or around 2020, a female physician and Medical Director at Mercy Hospital resigned, claiming she was a victim of sex discrimination.

56. In those meetings, Dr. Scullin also identified at least one other female physician who felt Bon Secours had discriminated against her.

57. Upon information and belief, since 2020, several other female physicians have alleged sex discrimination at Mercy Hospital and/or resigned due to sex discrimination.

58. On April 18, 2023, Dr. Scullin met with Dr. Palmer, Chief Medical Officer Chris Haas, and Vice President Tyson Ringle to discuss her compensation.

59. In that meeting, Dr. Scullin stated that she felt Mercy Health was discriminating against her based on sex with respect to her pay, specifically referencing her conversion factor per RVU.

60. In response, Dr. Palmer became visibly upset, to the point his face turned red. He snapped back that anyone who felt that way "should be separated" from Mercy Health, or words to that effect.

61. Around two weeks later, Bon Secours told Dr. Scullin that it was going to take away her hospital consultation practice, which represented about 20% of her job duties and would result in a significant cut in her pay.

62. When Dr. Scullin expressed that she believed the removal of part of her practice and resulting pay cut was unlawful retaliation, Bon Secours reversed course.

*Bon Secours pays Dr. Scullin less for her role as Medical Director than it paid a male predecessor*

63. Dr. Scullin's 1999 promotion to Medical Director was in addition to her duties as a clinical physician at the Hospital.

64. Defendants pay Medical Directors a stipend that is separate from compensation for their RVU production.

65. The Hospital initially paid Dr. Scullin $70,000 a year for her role as Medical Director, later increasing that to $80,000.

66. Dr. Scullin's predecessor in that role was female, and upon information and belief, the Hospital paid her $70,000 a year for serving as Medical Director.

67. The Medical Director before Dr. Scullin's predecessor was male. Upon information and belief, the Hospital paid him $250,000 a year, during the 1990s.

68. According to the most recent survey published by the American Academy of Physical Medicine and Rehabilitation, the median compensation for a Medical Director in a physical medicine and rehabilitation facility is approximately $250,000 per year.

69. Despite serving as Medical Director for 27 years, the $80,000 the Hospital pays Dr. Scullin even now is equal to the lowest reported figure in the entire survey, which was published in 2017.

70. Upon information and belief, Defendants are paying Dr. Scullin less for her role as Medical Director than comparable male physicians serving as Medical Directors performing jobs that require substantially equal skill, effort, and

responsibility, which are performed under substantially similar working conditions.

**Count One: Violation of the Equal Pay Act**

71. Plaintiff realleges each and every paragraph set forth above as if rewritten herein.

72. Dr. Scullin has the required skill and training to perform the procedures and patient services that Dr. Mathur and other male physicians in her department perform for Defendants.

73. Through the conduct described above, the Bon Secours Defendants have paid Dr. Scullin a lower wage rate than her male coworkers for equal work requiring substantially equal skill, effort, and responsibility, and which is performed under substantially similar working conditions at or for the Hospital.

74. The Bon Secours Defendants have therefore violated the Equal Pay Act, 29 U.S.C. § 206(d), for which the Bon Secours Defendants are liable to Dr. Scullin.

75. As a result of Defendants' conduct, Dr. Scullin has suffered lost salary, wages, and benefits; incurred attorneys' fees and costs of litigation; and, has been otherwise injured.

76. Based on the foregoing, the Bon Secours Defendants are liable to Dr. Scullin for liquidated damages in an amount equal to her economic loss, plus attorneys' fees.

**Count Two: Pay Discrimination in Violation of Title VII**

77. Plaintiff realleges each and every paragraph set forth above as if rewritten herein.

78. Through the conduct described above, the Bon Secours Defendants have discriminated against Dr. Scullin because of her sex with respect to compensation.

79. The Bon Secours Defendants have therefore violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*., for which they are liable to Dr. Scullin.

80. As a direct and proximate consequence of Defendants' unlawful conduct, described above, Dr. Scullin has suffered emotional distress and humiliation, lost salary, wages, and benefits; incurred attorneys' fees and costs of litigation; and, has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future, for which the Bon Secours Defendants are liable.

81. The Bon Secours Defendants' conduct, described above, was done: maliciously or with conscious disregard of Dr. Scullin's rights and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by Defendants' agents or servants, who, as principal or master, knowingly authorized, participated in, or ratified those actions and/or omissions, for which they are liable for punitive damages.

## Count Three: Violation of Ohio Revised Code Section 4111.17

82. Plaintiff realleges each and every paragraph set forth above as if rewritten herein.

83. Dr. Scullin has the required skill and training to perform the procedures and patient services that Dr. Mathur and other male physicians in her department perform for Defendants.

84. Through the conduct described above, the Bon Secours Defendants have paid Dr. Scullin a lower wage rate than her male coworkers for equal work, the performance of which requires equal skill, effort, and responsibility, and which are performed under similar conditions at or for the Hospital.

85. The Bon Secours Defendants have therefore violated Ohio Revised Code § 4111.17, for which the Bon Secours Defendants are liable to Dr. Scullin.

86. As a result of Defendants' conduct, Dr. Scullin has suffered lost salary, wages, and benefits; incurred attorneys' fees and costs of litigation; and, has been otherwise injured.

87. Based on the foregoing, the Bon Secours Defendants are liable to Dr. Scullin for liquidated damages in an amount equal to her economic loss, plus attorneys' fees.

## Count Four: Pay Discrimination in Violation of Ohio Revised Code Chapter 4112

88. Plaintiff realleges each and every paragraph set forth above as if rewritten herein.

89. Through the conduct described above, the Bon Secours Defendants have discriminated against Dr. Scullin because of her sex with respect to compensation.

90. The Bon Secours Defendants have therefore violated Ohio Revised Code Chapter 4112, for which they are liable to Dr. Scullin.

91. As a direct and proximate consequence of Defendants' unlawful conduct, described above, Dr. Scullin has suffered emotional distress and humiliation, lost salary, wages, and benefits; incurred attorneys' fees and costs of litigation; and, has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future, for which the Bon Secours Defendants are liable.

92. The Bon Secours Defendants' conduct, described above, was done: maliciously or with conscious disregard of Dr. Scullin's rights and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by Defendants' agents or servants, who, as principal or master, knowingly authorized, participated in, or ratified those actions and/or omissions, for which they are liable for punitive damages.

**Count Five: Retaliation in Violation of the Equal Pay Act**

93. Plaintiff realleges each and every paragraph set forth above as if rewritten herein.

94. By complaining to Defendants about pay discrimination on the basis of sex, Dr. Scullin engaged in protected activity under the Equal Pay Act.

95. Defendants were aware of Dr. Scullin's protected activity.

96. Dr. Scullin suffered an adverse employment act when Defendants threatened to take away a significant part of her practice and compensation in 2023.

97. Dr. Scullin suffered an adverse employment act when Defendants cut her RVU wage rate more than it cut the RVU wage rate for comparable male physicians in 2025.

98. There is a causal relationship between Dr. Scullin's protected complaints and these adverse actions taken by Defendants.

99. Through the conduct described above, the Bon Secours Defendants have retaliated against Dr. Scullin in violation of the Equal Pay Act, 29 U.S.C. §§ 206(d), 215, for which they are liable to her.

100. As a result of Defendants' conduct, Dr. Scullin has suffered lost salary, wages, and benefits; incurred attorneys' fees and costs of litigation; and, has been otherwise injured.

101. Based on the foregoing, the Bon Secours Defendants are liable to Dr. Scullin for liquidated damages in an amount equal to her economic loss, plus attorneys' fees.

**Count Six: Retaliation in Violation of Title VII**

102. Plaintiff realleges each and every paragraph set forth above as if rewritten herein.

103. By complaining to Defendants about pay discrimination on the basis of sex, Dr. Scullin engaged in protected activity under Title VII.

104. Defendants were aware of Dr. Scullin's protected activity.

105. Dr. Scullin suffered an adverse employment act when Defendants threatened to take away a significant part of her practice and compensation in 2023.

106. Dr. Scullin suffered an adverse employment act when Defendants cut her RVU wage rate more than it cut the RVU wage rate for comparable male physicians in 2025.

107. There is a causal relationship between Dr. Scullin's protected complaints and these adverse actions taken by Defendants.

108. Through the conduct described above, the Bon Secours Defendants have retaliated against Dr. Scullin in violation of Title VII, 42 U.S.C. § 2000e-3, for which they are liable to her.

109. As a direct and proximate consequence of Defendants' unlawful conduct, described above, Dr. Scullin has suffered emotional distress and humiliation, lost salary, wages, and benefits; incurred attorneys' fees and costs of litigation; and, has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future, for which the Bon Secours Defendants are liable.

110. The Bon Secours Defendants' conduct, described above, was done: maliciously or with conscious disregard of Dr. Scullin's rights and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by Defendants' agents or servants, who, as

principal or master, knowingly authorized, participated in, or ratified those actions and/or omissions, for which they are liable for punitive damages.

**Count Seven: Retaliation in violation of Ohio Revised Code Section 4112.02(I)**

111. Plaintiff realleges each and every paragraph set forth above as if rewritten herein.

112. By complaining to Defendants about pay discrimination on the basis of sex, Dr. Scullin engaged in protected activity under Ohio Revised Code Chapter 4112.

113. Defendants were aware of Dr. Scullin's protected activity.

114. Dr. Scullin suffered an adverse employment act when Defendants threatened to take away a significant part of her practice and compensation in 2023.

115. Dr. Scullin suffered an adverse employment act when Defendants cut her RVU wage rate more than it cut the RVU wage rate for comparable male physicians in 2025.

116. There is a causal relationship between Dr. Scullin's protected complaints and these adverse actions taken by Defendants.

117. Through the conduct described above, the Bon Secours Defendants have retaliated against Dr. Scullin in violation of Ohio Revised Code § 4112.02(I), for which they are liable to her.

118. As a direct and proximate consequence of Defendants' unlawful conduct, described above, Dr. Scullin has suffered emotional distress and humiliation,

lost salary, wages, and benefits; incurred attorneys' fees and costs of litigation; and, has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future, for which the Bon Secours Defendants are liable.

119. The Bon Secours Defendants' conduct, described above, was done: maliciously or with conscious disregard of Dr. Scullin's rights and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by Defendants' agents or servants, who, as principal or master, knowingly authorized, participated in, or ratified those actions and/or omissions, for which they are liable for punitive damages.

**Count Eight: Violation of Ohio Revised Code Section 4112.02(J)**

120. Plaintiff realleges each and every paragraph set forth above as if rewritten herein.

121. Dr. Palmer participated in, facilitated, was involved in, and/or made the decision to unlawfully discriminate and retaliate against Dr. Scullin based on the conduct described above.

122. Through his conduct stated above, Dr. Palmer aided, abetted, incited, compelled, or coerced an act declared by Ohio Revised Code § 4112.02 to be an unlawful discriminatory practice, and/or attempted directly or indirectly to commit an act declared by Ohio Revised Code § 4112.02 to be an unlawful discriminatory practice.

123. Dr. Palmer has therefore violated Ohio Revised Code § 4112.02(J), for which he is liable to Dr. Scullin.

124. As a direct and proximate consequence of Palmer's unlawful conduct, described above, Dr. Scullin has suffered emotional distress and humiliation, lost salary, wages, and benefits; incurred attorneys' fees and costs of litigation; and, has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future, for which Palmer is liable.

125. Palmer's conduct, described above, was done: maliciously or with conscious disregard of Dr. Scullin's rights and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by Palmer's agents or servants, who, as principal or master, knowingly authorized, participated in, or ratified those actions and/or omissions, for which he is liable for punitive damages.

## **Prayer for Relief**

WHEREFORE, Plaintiff prays for judgment against Defendants for: her economic loss; compensatory damages in an amount that will fully and fairly compensate her for her injury, damage, and loss; liquidated and punitive damages in such an amount as will sufficiently punish and deter the wrongful conduct of Defendants; reasonable attorney fees and costs of suit; and, pre- and post-judgment interest, and such other legal and equitable relief as is necessary and proper.

## **Jury Demand**

A trial by jury is hereby demanded.

Respectfully submitted,

/s/ Matthew D. Besser

Cathleen M. Bolek (0059884)
Matthew D. Besser (0078071)
Kelly A. Rochotte (0102943)
**BOLEK BESSER GLESIUS LLC**
5885 Landerbrook Drive
Suite 302
Cleveland, Ohio 44124
T 216.464.3004
F 866.542.0743
cbolek@bolekbesser.com
mbesser@bolekbesser.com
krochotte@bolekbesser.com

*Counsel for Plaintiff*